# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | | |
|---|---|---|
| **BERDETTA L. ADAMS** | * | **DOCKET NO. 07-1923** |
| **VERSUS** | * | **JUDGE JAMES** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The appeal was referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

## Background & Procedural History

Berdetta Adams filed the instant applications for Supplemental Security Income payments and Disability Insurance Benefits on February 28, and March 24, 2006, respectively. (Tr. 3, 11, 41-43). She alleged disability since October 26, 2004, due to patellofemoral pain syndrome, arthritis, a broken wrist, and status post-knee surgery. (Tr. 41, 56-57). The claims were denied at the initial stage of the administrative process. (Tr. 3, 26, 28-31). Thereafter, Adams requested and received an April 9, 2007, hearing before an Administrative Law Judge ("ALJ"). (Tr. 211-227). However, in a June 19, 2007, written decision, the ALJ determined that Adams was not disabled under the Social Security Act, finding at Step Five of the sequential evaluation process that she was able to make an adjustment to other work that exists in substantial numbers in the national economy. (Tr. 8-19). Adams appealed the adverse decision to the Appeals Council. Nonetheless, on September 13, 2007, the Appeals Council denied Adams' request for review;

thus the ALJ's decision became the final decision of the Commissioner. (Tr. 4-6).

On November 15, 2007, Adams sought review before this court. She alleges the following errors:

(1) the Commissioner failed to consider the entire record in evaluating the medical impairments; and

(2) the Commissioner's residual functional capacity assessment is not supported by substantial evidence.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found to be disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make

an adjustment to other work in the economy.
*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

**a) Steps Two and Three:**

The ALJ determined at Step Two of the sequential evaluation process that Adams suffers from severe impairments of obesity; degenerative disc disease; history of patellofemoral pain disease; status post right knee arthroscopy with medial plica incision, medial meniscectomy, and lateral partial synovectomy. (Tr. 14). However, the ALJ concluded that the impairments were not severe enough to meet or medically equal any of the impairments listed in the Category of Impairments in Appendix 1 to Subpart P, Social Security Regulations No. 4. (Tr. 14-15).

Plaintiff alleges that the Commissioner erred as a matter of law when he failed to find that her impairments met a listing. The potentially applicable listings are 1.02 and 1.03. They provide:

> **1.02** Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or

> ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

> * * *

> **1.03** Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

20 C.F.R. Pt. 404, Subpt. P, App. 1.02 and 1.03 (in pertinent part).

To establish that a claimant's injuries meet or medically equal a Listing, the claimant must provide medical findings that support all of the criteria for a listed impairment (or most similarly listed impairment). *See, Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). An impairment that manifests only some of the requisite criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891 (1990). If the plaintiff fails to demonstrate the specified medical criteria, the court will find that substantial evidence supports the ALJ's finding that Listings-level impairments are not present. *Selders*, 914 F.2d at 620. If a claimant does not exhibit all of the requisite findings of a listed impairment, medical equivalence may be established if the claimant has other findings related to the impairment that equal or exceed the required criteria for the listed impairment. 20 C.F.R. § 404.1526(b)(1). When determining whether an impairment medically equals a listing, the Commissioner considers all relevant evidence in the record. 20 C.F.R. §§ 404.1526(c), 416.926(c) (2006).[1]

      To meet Listing 1.02 or 1.03, the claimant must suffer from an inability to effectively ambulate. To ambulate effectively under the regulations, a claimant must be capable of

---

[1] The regulations formerly provided that medical equivalence was determined from medical evidence only. 20 C.F.R. § 416.926(b) (2006). However, the Commissioner recently explained that despite the change in the regulation, they have always interpreted "medical evidence"to include not just findings from medical sources, but also other information, including the claimant's own testimony. 71 FR 10431 (3/1/2006).

sustaining a reasonable walking pace over a sufficient distance to carry out activities of daily living. 20 C.F.R. § 404, Subpart P, Appendix I, Listing 1.00B2b. Although plaintiff represented at times that she has difficulty walking, the record also contains opinions from medical professionals that she is able to ambulate without difficulty. (*See*, Tr. 139-141, 193-197).[2] These medical opinions provide substantial evidence to support the Commissioner's determination that Adams' impairments did not meet or otherwise medically equal a musculoskeletal system listing.[3]

b) **Residual Functional Capacity:**

The ALJ next determined that Adams retains the residual functional capacity to perform the full range of sedentary work.[4] Plaintiff alleges various errors with the ALJ's assessment. At the outset, the court recognizes that there is substantial evidence from plaintiff's own representations and activities and the medical record to support the ALJ's determination.

Plaintiff's impairments stem from October 26, 2004, when she fell and hurt her right knee at work. (*See*, Tr. 116-117). On February 17, 2005, Adams underwent arthroscopic surgery on

---

[2] To the extent that plaintiff asserts that she has to walk with assistive devices, there is no record evidence demonstrating a medical basis for the devices. *See*, Listing 1.00J(4). The consultative examiner, Scott Pollack, M.D. did not believe that an assistive device was medically necessary. (Tr. 196).

[3] Plaintiff does not allege that her impairments meet or equal a listing within any other body system.

[4] Sedentary work entails:
> . . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a).

her right knee, with medial plica incission, medial meniscectomy, and lateral partial synovectomy. (Tr. 126-127). On May 5, 2005, Adams told her orthopedic surgeon, Randolph Taylor, M.D., that she wanted to work part-time. (Tr. 139-141). She told him that her knee would swell after standing for eight hours. *Id*. Nevertheless, Dr. Taylor returned her to full duty work, with no restrictions. *Id*.

On September 9, 2005, Adams went to the emergency room. (Tr. 172-173). She complained of mild to moderate bilateral knee pain. *Id*. However, she exhibited normal range of motion and normal gait/weight bearing. *Id*.

Physician's notes from December 19, 2005, indicate that plaintiff fell and broke her wrist while working at a patient's house. (Tr. 192). A January 31, 2006, progress note by Douglas Liles, M.D., observed that her x-rays showed good evidence of healing. (Tr. 189). He reassured her, and told her to wait at least three or four months before deciding to do anything else. *Id*.

On May 20, 2006, Scott Pollack, M.D., examined plaintiff at the request of Disability Determination Services. (Tr. 193-197). Adams reported that she her impairments included patellofemoral pain syndrome, osteoarthritis, a broken wrist, and status post right knee surgery. *Id*. She reported continued pain in her right patella at all times. *Id*. The pain was worse when she walked long distances or sat for a long time. *Id*. She reported experiencing left knee pain since September 2005. *Id*. She further stated that she had a broken and swollen left wrist. *Id*. Adams reported that she could dress and feed herself. *Id*. She could stand at one time for 20 minutes. *Id*. She could walk on level ground for one hour and sit for 30 minutes. *Id*. She could drive a car and lift six pounds. *Id*. She could also sweep, mop, vacuum, cook, and do dishes. *Id*.

Upon examination, Adams did not exhibit any difficulty ambulating, or mounting and

dismounting the examination table. *Id*. She also had no difficulty arising from the chair. *Id*. She had mild swelling in her knee joints. *Id*. She described a normal gait and station and did not use an assistive device. *Id*. Pollack also felt that an assistive device was not medically necessary. *Id*. Her grip was 5/5 in the bilateral upper extremities, with good dexterity. *Id*. She demonstrated full, but painful knee flexion. *Id*. She had moderate difficulty walking on heels and toes and squatting. *Id*. A right knee x-ray showed moderate loss of joint space. *Id*. Pollack diagnosed patellofemoral pain syndrome and attributed her bilateral knee pain to her loss of joint space. *Id*. Nonetheless, Pollack opined that Adams could sit, lift, hear, speak, and handle objects and could stand and walk for a certain amount of time "but subjective to per patient." *Id*.

To sum up, the evidence establishes that in 2005, a treating physician released Adams to return to full duty work, without any restrictions. More recently, the consultative physician, Dr. Pollack, found that Adams could sit, lift, hear, speak, and handle objects. Plaintiff told Pollack that she could walk for an hour and stand for 20 minutes.[5] Moreover, when she filed for benefits in 2006, Adams represented that she could stand for an hour at a time, with 30 minutes breaks in between and lift 20 pounds. (Tr. 87, 90). She wrote on the questionnaire that she: washed clothes, cleaned (including the bathroom), dusted, and made the beds. (Tr. 87). It took her about eight hours to complete her chores. *Id*. Finally, as of the April 2007 hearing, Adams stated that she retained the ability to work as a part-time sitter twice per week, for eight hours at a time. (Tr. 214-215).[6]

---

[5] In 2005, she told her orthopedic surgeon that *after standing for eight hours*, her knee swelled. (Tr. 139-141) (emphasis added).

[6] The court observes that the instant suit record contains evidence that as of June 2007, Adams' earnings appeared to exceed the minimum level to "ordinarily show" that she performed substantially gainful activity. (*See*, Food Stamp Change/Closure Printout; Exh. to Pl. M/Proceed

8

Between the medical assessments and her own reported activities, the administrative record contains substantial evidence to support the Commissioner's finding that plaintiff is able to perform the essential demands of sedentary work. *See*, SSR 96-9p.[7] To the extent that plaintiff may be restricted in her ability to perform postural activities such as climbing ladders, ropes, or scaffolds; balancing; kneeling; crouching; or crawling, such limitations would not significantly erode the occupational base for the full range of sedentary work. SSR 96-9p.[8]

Plaintiff contends that the ALJ failed to account for her complaints of pain. The court recognizes that pain is considered disabling under the Social Security Act only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Selders v. Sullivan*, 914 F.2d 614, 618-619 (5th Cir. 1990). The ALJ's decision as to the credibility of plaintiff's complaints of pain is entitled to considerable judicial deference if supported by substantial evidence. *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986); *Wren v. Sullivan*, 925 F.2d 123,

---

IFP [doc. # 2]; 20 C.F.R. §§ 404.1572 & 1574). However, the undersigned did not rely upon this evidence because it does not constitute part of the administrative record before the Commissioner.

[7] Even if plaintiff needed an assistive device for prolonged ambulation or to walk over rough terrain, this would not ordinarily erode the sedentary occupational base. *Id*.

[8] Evidence that Adams can put on and take off her shoes without difficulty and perform household chores indicates that she can occasionally stoop. (Tr. 87, 195); SSR 96-9p. Non-exertional impairments that do not significantly impact the occupational base for sedentary work do not undermine the Commissioner' Step Five determination. *See*, *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987) (citations omitted) (when a claimant's non-exertional impairments do not significantly affect her residual functional capacity, the ALJ may rely exclusively on the Guidelines); s*ee also*, *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999); *Selders v. Sullivan*, 914 F.2d 614, 618-619 (5th Cir. 1990). Thus, to the extent that the ALJ may have erred in failing to recognize any non-exertional limitations, such error was harmless. Procedural improprieties "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988).

128 (5th Cir. 1991). Factors that the ALJ may consider in evaluating the claimant's subjective complaints include: (1) claimant's daily activities; *Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992); *Reyes v. Sullivan*, 915 F.2d, 151, 155 (5th Cir. 1990); (2) medication the claimant takes for pain; *Anthony v. Sullivan, supra; Villa v. Sullivan,* 895 F.2d 1019, 1024 (5th Cir. 1990); (3) degree of medical treatment; *Villa v. Sullivan, supra; Nickerson v. Secretary of Health and Human Services*, 894 F. Supp. 279 (E.D. Tex. 8/3/1995)*;* (4) lack of medical opinions in the record indicating the claimant is precluded from performing the level of activity indicated by the ALJ; *Villa v. Sullivan, supra;* and (5) external manifestations of debilitating pain such as marked weight loss. *Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *see also* 20 C.F.R.§§404.1529(C)(3)(I)-(vii), 416.929(c)(3)(I)-(vii) (1993).

In this case, the ALJ carefully considered plaintiff's complaints of pain and found that her impairments could reasonably cause her alleged symptoms. (Tr. 16-17). However, he did not credit her allegations regarding the intensity, persistence, and limiting effects of the symptoms. (Tr. 17). Based upon her impairments and complaints of pain, the ALJ reduced plaintiff's residual functional capacity to the sedentary occupational base. There is substantial record evidence that the ALJ's residual functional capacity assessment accommodated plaintiff's impairments and their effects. *See*, discussion, *supra*; *Story v. Astrue*, Docket No. 08-10234 (5th Cir. Sept. 30, 2008) (unpubl.) (ALJ fulfilled obligation to make explicit credibility findings when he considered claimant's allegations and found them inconsistent with the medical evidence).

Plaintiff alleges that the ALJ erred when he found that she could return to past relevant work as a medical transport driver. (Pl. Memo., pgs. 5-6). However, the state agency made that determination – not the ALJ. (*See*, Tr. 28). The ALJ determined that plaintiff could *not* return to

10

her past relevant work. (Tr. 17-18).

Plaintiff contends that the ALJ rejected, without explanation, the limitations recognized by Dr. Pollack. She further alleges that the ALJ failed to consider requisite factors set forth in 20 C.F.R. § 1527(d)(2) before rejecting the opinions of the examining doctors. However, there is no indication in the ALJ's decision that he rejected the opinions of any examining physician.

Plaintiff next argues that the ALJ improperly relied upon the physical residual functional capacity assessment form completed by the state agency disability examiner, Mary Dumars. (Tr. 198-205). While plaintiff correctly observes that a disability examiner is not an acceptable source or even a medical professional,[9] there is no indication that the ALJ relied upon her assessment. In fact, the ALJ's residual functional capacity assessment was more limited than the disability examiner's findings.

Finally, plaintiff complains that the ALJ failed to address whether she could maintain any such employment for a significant period of time. *See, Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). However, the Fifth Circuit has confirmed that remand for a determination of whether a claimant can maintain employment is not required where, as here, the claimant did not: 1) assert that her condition only periodically precludes her from working, and 2) offer medical evidence that her condition would intermittently prevent her from maintaining employment or functioning in the employment context. *Wise v. Barnhart*, 101 Fed. Appx. 950, 2004 WL 1372922 (5th Cir. 2004) (unpubl.).

For the reasons set forth above, the undersigned finds that the Commissioner's decision is supported by substantial evidence and is free of legal error. Accordingly,

---

[9] *See generally*, 20 C.F.R. 404.1527(f), 416.927(f); 404.1513(d)(3)

**IT IS RECOMMENDED** that the Commissioner's decision to deny disability benefits be **AFFIRMED**, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 2nd day of October, 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE